UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DANNY J. McINTIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:17CV910-PPS |
| | ) | |
| NANCY BERRYHILL, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Danny McIntire is a 50-year-old man with severe impairments including a seizure disorder and borderline intellectual functioning. McIntire appeals the denial of his applications for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration. The final decision against McIntire is embodied in a written opinion by an administrative law judge, issued after a hearing at which McIntire and his mother testified. McIntire asks me to reverse the ALJ's decision and find that he was disabled as of December 20, 2013, or remand for further proceedings by the Social Security Administration.

My review of the ALJ's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision

without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

When considering the evidence, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick*, 775 F.3d at 935, quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This means that an ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

## Discussion

McIntire raises two issues in this appeal. The first is that the ALJ failed to consider the combined effects of McIntire's seizure disorder and borderline intellectual functioning. McIntire's second argument is that the ALJ failed to explain his rejection of some of an examining psychologist's findings concerning McIntire's intellectual functioning and seizure disorder.

**Combined Effects of Seizure Disorder and Cognitive Limitations**

"Listings" are definitions of disorders in the Social Security regulations which, if met or medically equaled by an applicant's condition, support a finding that the applicant is disabled without considering age, education, and work experience. 20 C.F.R. §414.1520(a)(4)(iii), §404.1520(d). The ALJ found that McIntire's seizure

disorder and borderline intellectual functioning were both severe impairments. [AR at 17.][1] As the ALJ explained, that means that each of those conditions (among others McIntire has) "significantly limits [McIntire's] ability to perform basic work activities." [*Id*. at 16 .] Listing 11.02 provides a complicated definition of disabling epilepsy, which the ALJ reproduced in his decision. [AR at 18-19.] The ALJ also considered Listing 12.05, which defines intellectual disorder. [AR at 19-20.] The ALJ found that McIntire's impairments did not meet or medically equal the elements of either of these Listings. [AR at 18-20.]

Although the ALJ included epilepsy/seizure disorder among McIntire's severe impairments, after setting out the text of Listing 11.02 on epilepsy, the decision only makes a conclusory statement that a review of the evidence shows that McIntire does not meet or medically equal the Listing. The ALJ's decision does not mention, much less discuss or analyze, McIntire's "absence" or petit mal seizures. As McIntire points out, his mother testified that he has petit mal seizures 4 to 5 times a week, leaving him foggy afterward. [AR at 71.] During a mental status exam, Dr Alan Wax actually witnessed an a "absence seizure" that left McIntire unfocused and with slurred speech. [AR at 441.] Although the ALJ's decision reviews Dr. Wax's assessment of McIntire's borderline intellectual functioning, the ALJ omitted any reference to the seizure Dr. Wax witnessed. [AR at 23.]

---

[1] The administrative record [AR] is found in the court record at docket entry 9, and consists of 825 pages. I cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

3

Dr. Ewa Bialikiewicz, McIntire's family physician since 2008, referred McIntire for an EEG in April 2008, and the results were "abnormal because of mildly excessive diffuse slowing and decreased organization" suggesting "mild diffuse cerebral dysfunction." [AR at 688.] His history of seizures has apparently been significant enough to preclude driving. [AR at 40.] In a letter dated August 19, 2014, Dr. Bialikiewicz expressed her opinion that McIntire is "unable to hold a job due to his medical conditions," including "mental retardation with behavioral problems and learning disabilities" as well as "epilepsy and other forms of convulsions." [AR at 596.] She has repeated these views in subsequent letters dated February 3, 2015 and November 1, 2016. [AR at 709, 762.]

It is unclear to me why McIntire's condition does not meet Listing 11.02(B) – "Dyscognitive seizures....occurring at least once a week for at least 3 consecutive months...despite adherence to prescribed treatment." The definition of "Dyscognitive seizure" is one "characterized by alteration of consciousness without convulsions or loss of muscle control" during which "blank staring, change of facial expression, and automatisms...may occur." Listing 11.00(H)(2). What is clear to me is that the ALJ's decision does not demonstrate full and fair consideration of McIntire's seizure disorder and its impact on his ability to function in a workplace. In the absence of any discussion of the condition, substantial evidence does not support the ALJ's conclusion that McIntire does not meet Listing 11.02. *Barnett v. Barnhart*, 381 F.3d 664, 668-70 (7th Cir. 2004)("an ALJ must discuss the listing by name and offer more than a perfunctory analysis").

4

The combined impact of the seizure disorder and borderline intellectual functioning is also not discussed in the ALJ's decision. The ALJ determined that, standing alone, McIntire's intellectual functioning does not meet Listing 12.05 for intellectual disorder. The ALJ's analysis refers to 12.05(B) and appears to tacitly concede that McIntire meets the IQ limitations of 12.05(B)(1)(b) and the durational requirements of 12.05(B)(3). It appears that the ALJ ruled out the Listing because he concluded that McIntire has only mild or moderate limitations in the four functional areas defined in 12.05(B)(2).

McIntire would meet the Listing if his ability to "understand, remember, or apply information" (12.05(B)(2)(a)) and his ability to "concentrate, persist, or maintain pace" (12.05(B)(2)(c)) were found to be markedly, rather than mildly, limited. Both of these species of intellectual function may be impacted by McIntire's frequent seizures, given that they interrupt his thinking and leave him with no memory during the occurrence. Dr. Wax, who witnessed one of the seizures, described it as lasting approximately two minutes and rendering McIntire less alert and less focused. [AR at 441.] The ALJ's failure to consider the combined impact of McIntire's borderline intellectual functioning and his frequent seizures, and whether together those meet – or equal in severity – the parameters of Listing 12.05, or for that matter Listing 12.02, preclude my affirmance of the ALJ's step three analysis.

The ALJ repeatedly relied on McIntire's and his mother's claims about his independence with his personal care and daily chores to support a non-disabled functional capacity [AR at 22, 23] but then, to the contrary, includes a boilerplate

5

conclusion that McIntire's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not fully consistent with the evidence." [AR at 24.] In other words, McIntire is to be believed when he testifies as to positive traits that he has, but he is not to be believed when he references the negatives. Another irony of the ALJ's decision is that he seems to weigh against McIntire his demonstrated interest in working and his unsuccessful efforts to find a job. [AR at 22, 23.] As the Seventh Circuit has noted, "seeking work is not the same as actually working or being demonstrably able to work." *Fisher v. Berryhill*, ___ Fed.Appx. ___, 2019 WL 644219, at *6 (7th Cir. Feb. 15, 2019). *See also Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (a desire to work is not inconsistent with an inability to work due to a disability).

McIntire's seizure disorder may or may not meet Listing 11.02, and the combined effect of his seizure disorder and borderline intellectual functioning may or may not meet or medically equal Listing 11.02 or Listing 11.05. But the ALJ's decision does not address these possibilities with a discussion relating the evidence to his conclusions. Reversal is required because I am unable to assess the validity of the agency's ultimate findings and afford McIntire meaningful judicial review. *Moore*, 743 F.3d at 1121.

**Opinion of Dr. Wax**

McIntire's second argument is that the ALJ failed to adequately consider the opinions of Dr. Wax, who performed a psychological evaluation of McIntire on March 24, 2010. After administering the WAIS-4 battery of testing, Dr. Wax concluded that McIntire's "[c]ognitive functioning is at the low end of the Borderline range...with

6

corresponding memory, attention, communication, and focusing." [AR at 443.] Dr. Wax diagnosed McIntire's Global Assessment of Function or GAF score at 55. [AR at 443.] That GAF score reflects moderate impairment in psychological, social and occupational functioning and/or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR, p.34. I've previously noted that Dr. Wax observed first-hand a two-minute absence seizure, after which McIntire was less alert and focused, and his speech was slurred. [AR at 441.]

Although the ALJ overlooked the seizure, he gave great weight to Dr. Wax's GAF score assignment and his diagnostic finding of borderline intellectual functioning. [AR at 23.] McIntire challenges the ALJ's determination, despite accepting these diagnostic determinations reflecting borderline functioning, that McIntire retained the capacity to function independently. [DE 18 at 13; AR at 23.] After citing hearing testimony as to McIntire's limitations in daily activities, McIntire argues that the ALJ's "failure to discuss the reasons he dismissed the remainder of Dr. Wax's findings means the ALJ's determination of his mental residual functional capacity is not supported by substantial evidence...." [DE 18 at 13.]

Since the ALJ did in fact accept Dr. Wax's findings concerning McIntire's cognitive functioning, it is not clear to me what McIntire means by "the remainder of Dr. Wax's findings" other than his report concerning the seizure. I have addressed this omission in my analysis of McIntire's first ground for relief. Otherwise, McIntire's argument devolves into an attempt to reweigh the evidence in determining his functional limitations. But the court's role is not to "substitute its own judgment for

7

that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

To the extent McIntire is challenging the ALJ's hypotheticals to the vocational expert for failure to reflect time off task due to McIntire's seizure disorder [DE 18 at 12], the argument is underdeveloped. McIntire presents no evidentiary basis or rationale for any particular hypothetical as to time off task attributable to seizures. In all events, given the remand for further consideration of the seizure disorder, alone and in combination with borderline intellectual functioning, the Commissioner may devote additional attention to this issue as well.

## Conclusion

The ALJ's decision offers an inadequate analysis of McIntire's seizure disorder relative to Listing 11.02, and of the combined effect of his seizure disorder and borderline intellectual functioning relative to Listings 11.02 and 11.05. Without that explanation of the "logical bridge" between the evidence and his conclusions, I cannot say that the denial of benefits is supported by substantial evidence.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Danny J. McIntire's application for Social Security Disability benefits is REVERSED, and the matter is remanded to the Commissioner for further proceedings consistent with this opinion.

The Clerk shall enter judgment in favor of plaintiff and against the defendant.

**SO ORDERED**.

ENTERED: March 6, 2019.

                                              /s/ Philip P. Simon
                                              **PHILIP P. SIMON, JUDGE**
                                              **UNITED STATES DISTRICT COURT**